ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IX

| WILLIAM PÉREZ AVILÉS<br><br>Recurrido<br><br>v.<br><br>MUNICIPIO DE CAROLINA<br><br>Recurrente | KLRA202400480 | *Revisión Judicial* procedente de la Comisión Apelativa del Servicio Público<br><br>Caso Núm.:<br>2021-07-0002<br><br>Sobre: Retribución |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero y el Juez Campos Pérez

Campos Pérez, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 9 de mayo de 2025.

Comparece ante nos el Municipio Autónomo de Carolina (Municipio o recurrente) y solicita la revocación de la *Resolución* emitida el 5 de mayo de 2024 por la Comisión Apelativa del Servicio Público (CASP).[1] En dicha *Resolución,* la CASP declaró No Ha Lugar la *Moción de Reconsideración* del recurrente y, al así hacerlo, le ordenó el pago de una suma correspondiente a un aumento salarial por años de servicios.

Por los fundamentos que expondremos a continuación, se declara ha lugar el recurso de revisión administrativa y, por consiguiente, se revoca la resolución de la CASP.

### I.

El 1 de julio de 2021, el Sr. William Pérez Avilés (señor Pérez Avilés o recurrido) presentó una apelación ante la CASP sobre reclamo de aumento salarial por años de servicios para los periodos de 2008-2013 y 2013-2018 al amparo de la Ley de Municipios Autónomos de Puerto Rico, Ley Núm. 81 de 30 de Agosto de 1991[2],

---

[1] Apéndice, págs. 1-3.
[2] La Ley Núm. 81-1991 fue derogada por la Ley Núm. 107-2020. No obstante, la misma es de aplicación al presente caso toda vez que las reclamaciones del señor Pérez Avilés se basan en hechos ocurridos durante la vigencia de la Ley Núm. 81-1991.

Número Identificador

SEN2025_____

según enmendada (Ley Núm. 81-1991).[3] Según se desprende del recurso de apelación, el recurrido es policía municipal en el Municipio de Carolina y alegó que desde el 1 de julio de 2008 no recibía ningún aumento. Arguyó, además, que el Municipio de Carolina tenía capacidad económica para conceder los aumentos.

El 16 de julio de 2016, el Municipio contestó la apelación y, en síntesis, alegó que el señor Pérez Avilés no tenía derecho a los aumentos reclamados porque no se configuraban los criterios prescritos en el Artículo 11.015 (c) de la Ley Núm. 81-1991.[4] Específicamente, el recurrente alegó no tener capacidad económica para concederles aumentos a sus empleados, incluyendo al recurrido. Por esto, el Municipio planteó que la solicitud del señor Pérez Avilés no presentaba un asunto justiciable ya que, al tratar sobre la administración de sus finanzas y el proceso presupuestario, era una cuestión política que le competía exclusivamente al poder ejecutivo y al poder legislativo del gobierno municipal. En la alternativa, el recurrente arguyó que el señor Pérez Avilés tenía el peso de probar la capacidad económica del Municipio y el rendimiento satisfactorio de sus servicios durante los periodos reclamados debido a que los aumentos no eran automáticos.

Posteriormente, la CASP les ordenó a las partes en varias instancias que anunciaran su prueba documental y testifical.[5] El Municipio anunció como prueba documental varios documentos relativos a la capacidad económica del recurrente, al igual que documentos relacionados a varias medidas disciplinarias que pesaban contra el recurrido.[6] Junto a dicha documentación, el recurrente anunció como prueba testifical al Sr. Manuel I. Mangual Rodríguez, Gerente de Administración y la Sra. Nydia R. Talavera

---

[3] Apéndice, págs. 513-517.
[4] Apéndice, págs. 507-512.
[5] Apéndice, págs. 495-498 y 502-503.
[6] Apéndice, págs. 463-481.

Forty, Directora de Recursos Humanos. Por su parte, el señor Pérez Avilés anunció como prueba documental la carta de reclamación de otorgación de pasos por años de servicio y como prueba testifical, el recurrido anunció su propio testimonio.[7] El testimonio del señor Pérez Avilés se limitaría al salario que devengaba para aquella fecha, al igual que las fechas en las cuales era acreedor al paso por años de servicios reclamados.

Así las cosas, el 25 de marzo de 2022, el Municipio presentó una *Moción de Resolución Sumaria.*[8] En esencia, el recurrente reconoció que el Artículo 11.015 (c) de la Ley de Municipios contempla el derecho a recibir un aumento salarial cada 5 años a los empleados que ocupen puestos regulares y que no hayan recibido ninguna clase de aumento durante el periodo de 5 años. 21 LPRA sec. 45656 (c). No obstante, el Municipio arguyó que el precitado artículo dispone que los aumentos salariales concederán cuando el municipio tenga capacidad económica para ello y el empleado haya prestado un servicio satisfactorio. El recurrente concluyó que el señor Pérez Avilés no presentó prueba sobre la capacidad económica del Municipio ni sobre el desempeño satisfactorio de sus servicios. Adujo, además, que ante el incumplimiento del recurrido con los elementos dispuestos en la Ley Núm. 81-1991, procedía la desestimación del recurso de apelación.

El 20 de abril de 2022, el señor Pérez Avilés presentó su *Réplica a Moción de Resolución Sumaria.* En apretada síntesis, el recurrido arguyó que aún quedaban dos asuntos por dilucidar: la capacidad económica del Municipio y si las medidas disciplinarias del recurrido le exceptuaban del aumento salarial según dispone el Artículo 11.015 (c) de la Ley Núm. 81-1991, *supra.* Además, señaló que el recurrente no levantó como defensa afirmativa las medidas

---

[7] Apéndice, págs. 482-483.
[8] Apéndice, págs. 427-460.

disciplinarias que pesan en contra del recurrido, sino que solo planteó como defensa su incapacidad económica para conceder los aumentos salariales. Por ello, el señor Pérez Avilés concluyó que la solicitud del Municipio era tardía y que por ello, procedía que la CASP no resolviera de forma sumaria la controversia.

El 21 de abril de 2022, el Municipio presentó una *Urgente Breve Dúplica* en la cual explicó que su fundamento principal al solicitar la resolución sumaria del caso es la insuficiencia de prueba por parte del recurrido. Arguyó el recurrente que el señor Pérez Avilés no presentó argumentos al respecto.

Luego de varios trámites procesales, la CASP declaró No Ha Lugar la *Moción de Resolución Sumaria* del recurrente el 2 de septiembre de 2022.[9] La CASP razonó que existía una controversia de hechos acerca de las medidas disciplinarias *vis a vis* las evaluaciones satisfactorias del señor Pérez Avilés durante los periodos reclamados. De igual forma, la CASP ordenó la celebración de una vista adjudicativa a celebrarse el 5 de octubre de 2022. Además, la CASP les concedió un término adicional a las partes para presentar sus anejos y listas de testigos actualizada.

El 23 de septiembre de 2022 el Municipio presentó una *Moción Suplementaria para Anunciar Prueba de la parte apelada.*[10] Allí, el recurrente confirmó que presentaría la prueba documental y testifical previamente anunciada. Ello no obstante, el recurrente añadió a su lista de testigos al Sr. Roberto Colón Baerga, Ejecutivo I del Departamento de Recursos Humanos. Por su parte, el señor Pérez Avilés presentó su *Moción Suplementando Prueba* el 30 de septiembre de 2022.[11] En ella, confirmó la prueba documental y testifical previamente anunciada. De otro lado, añadió a su prueba

---

[9] Apéndice, págs. 349-350. Notificada el 7 de septiembre de 2022.
[10] Apéndice, págs. 336-339.
[11] Apéndice, págs. 334-335.

documental un informe de cambio especial con fecha del 1 de julio de 2008 y añadió como testigo al Sr. Manuel I. Mangual Rodríguez para que declarara sobre la situación fiscal del recurrente.

Tras varios tramites procesales, la CASP celebró la vista en su fondo el 23 de febrero de 2023 ante el Oficial Examinador, Sr. Aldo Brito Rodríguez (Oficial Examinador o señor Brito Rodríguez).[12] A esta comparecieron las partes y sus respectivos testigos. Contando con la comparecencia de todos, las partes presentaron la prueba documental y los testigos anunciados. No obstante, el señor Pérez Avilés no presentó el testimonio del Sr. Manuel I. Mangual Rodríguez y añadió como prueba documental la resolución final de la CASP en el caso *Yamilka Ortiz Hernández v. Municipio de Carolina*, 2013-12-0315; la cual fue subsecuentemente revocada por esta Curia en el caso *Yamilka Ortiz Hernández v. Municipio de Carolina*, KLRA202300224. Por su parte, el Municipio de Carolina presentó tanto el testimonio del Sr. Manuel I. Mangual Rodríguez, como el de la Sra. Nydia Talavera Forty.[13] Entre la prueba documental del recurrente, se presentó ante la consideración de la CASP el caso *Israel Martínez Rivera v. Municipio de Carolina*, KLRA202000412.

Al concluirse la vista, el señor Brito Rodríguez le ordenó al Municipio presentar su *Moción de Resolución Sumaria*, al igual que los estados financieros auditados del recurrente correspondientes a los años 2013-2014 y 2018-2019. El 8 de marzo de 2023, el recurrente presentó una *Moción en Cumplimiento de Orden* y la acompañó de los estados financieros solicitados por el Oficial Examinador.[14] Mientras que el 16 de marzo de 2023, el Municipio

---

[12] Apéndice, págs. 332-333.
[13] El Sr. Roberto Colón Baerga no testificó puesto que las partes estipularon los asuntos sobre los cuales testificaría: las medidas disciplinarias contra el señor Pérez Avilés.
[14] Apéndice, págs. 80-331.

presentó una *Moción de Non Suit* donde reiteró su solicitud de desestimación.[15]

El 28 de septiembre de 2023, el Oficial Examinador rindió su *Informe*[16] y, luego de examinar la prueba documental y testifical, realizó las siguientes determinaciones de hechos:

1) El APELANTE es policía municipal de Carolina, adscrito al área de Isla Verde.

2) El último aumento de salario del APELANTE fue otorgado por el APELADO el 1 de julio de 2008.

3) El APELANTE no recibió aumento por años de servicio para los periodos 2008- 2013, ni por el 2013- 2018.

4) El balance de fondos no comprometidos del fondo general del presupuesto del APELADO es la partida que sufraga la nómina de los empleados del Municipio de Carolina.

5) El último aumento por años de servicio otorgado a los empleados del APELADO fue el 1 de julio de 2008.

6) El aumento salarial por años de servicio que el APELADO otorgo a sus empleados el 1 de julio de 2008, tuvo un impacto económico de $4,058,000 en el año fiscal 2008-2009.

7) Si el APELADO hubiera otorgado el aumento por año de servicio por el periodo 2008-2013, el impacto económico en su presupuesto 2013-2014 habría sido de $3,861,700.

8) Si el APELADO hubiera otorgado el aumento por años de servicio para el periodo 2013-2018, el impacto económico en su presupuesto 2018-2019 habría sido de $3,029,566.

9) Al 26 de octubre de 2021, el impacto económico de otorgar los dos (2) aumentos por años de servicio antes consignados sería de $39,982,298.

10) EI balance de fondos no comprometidos del fondo general del presupuesto del APELADO para el año fiscal 2013-2014, al finalizar dicho periodo, fue de $197,936.

11) El balance de fondos no comprometidos del fondo general del presupuesto del APELADO para el año fiscal 2018-2019, al finalizar dicho periodo, fue de $681,137.

12) Durante los quinquenios, en los cuates el APELANTE reclama aumento de salario por años de servicio 2008-2013 y 2013-

---

[15] Apéndice, págs. 73-79.
[16] Apéndice, págs. 34-48.

2018, el APELANTE fue objeto de seis (6) medidas disciplinarias.

13) Durante el periodo por el cual el APELANTE reclama aumento por años de servicio, a saber 2008-2013 y 2013-2018, tuvo evaluaciones de ejecutorias satisfactorias.

El señor Brito Rodríguez determinó que de la prueba se desprendía que el Municipio no contaba con el capital necesario para conceder el aumento salarial del señor Pérez Avilés. Específicamente, el Oficial Examinador resaltó el testimonio del Sr. Manuel I. Mangual Rodríguez ya que —a su entender— expuso de forma detalla la condición financiera del recurrente para los años 2008 y 2013. Expuso el señor Brito Rodríguez:

> [El Sr. Manuel I. Mangual Rodríguez] fue enfático en que los cálculos de los efectos de pagar el aumento por años de servicios se realizaron para todos los empleados del APELADO, no solamente para el APELANTE o para los policías municipales, debido a que así lo instruye la Ley de Municipios Autónomos. También, al analizar la prueba documental ofrecida en la vista por el APELADO, la cual no fue refutada por la parte APELANTE, podemos llegar a la conclusión que el APELADO no contaba con la capacidad, económica para realizar el pago de aumento por años de servicio para los quinquenios 2008-2013 y 2013-2018.

> Al examinar los fondos no comprometidos con los que contaba el APELADO durante los años fiscales 2013-2014 y 2018-2019, los cuales eran respectivamente $197,936.00 y $681,137.00, podemos notar que el APELADO no contaba con capacidad económica para realizar el aumento por años de servicio, y que *si hubiera realizado el pago de los años de servicio, habría caído en déficit presupuestario en dichos años y los subsiguientes.*[17]

En vista de lo anterior, el Oficial Examinador le recomendó a la CASP declarar No Ha Lugar la apelación del recurrido.

Trabada así la controversia, la CASP emitió una *Resolución* el 11 de abril de 2024 en la cual declaró Ha Lugar la apelación del señor Pérez Avilés ya que el aumento salarial del recurrido para el periodo de 2008-2013 no dependía de la situación fiscal del municipio.[18] La CASP razonó que la Ley Núm. 81-1991 no era

---

[17] Apéndice, pág. 46.
[18] Apéndice, págs. 18-33.

aplicable a la controversia de autos, sino que aplicaban los Reglamentos de la Policía Municipal de Carolina, adoptados en los años 2000 y 2016. La CASP concluyó que, en base a las disposiciones del Reglamento de 2000, el aumento de salario del señor Pérez Avilés no dependía de la situación fiscal del Municipio de Carolina. Añadió la CASP que los policías municipales era el único grupo de empleados que tenía derecho a recibir un aumento salarial sin sujeción a la situación fiscal del Municipio. Por lo que, la CASP le concedió al recurrido el aumento correspondiente al periodo de 2008-2013. No obstante, la CASP concluyó que para el periodo de 2013-2018, el Reglamento de 2016 estaba vigente y este sí estaba sujeto a la capacidad económica del recurrente. La CASP concluyó que el señor Pérez Avilés no presentó prueba sobre la capacidad del Municipio, no procedía el aumento correspondiente al periodo de 2013-2018.

En cuanto al argumento del Municipio sobre la falta de justiciabildad por cuestión política, la CASP se acogió a sus pronunciamientos expuestos en la resolución del caso *Yamilka Ortiz Hernández v. Municipio de Carolina*, 2013-12-0315. La CASP razonó que la doctrina de cuestión política se creó para preservar la separación de poderes entre las tres ramas de gobierno. Como la CASP es una agencia adscrita a la Rama Ejecutiva cuyas facultades adjudicativas están limitadas hacen que, en el caso particular del señor Pérez Avilés, sea impracticable la doctrina de justiciabilidad por cuestión política.

El Municipio solicitó la reconsideración de la Resolución del 11 de abril de 2024.[19] En esencia, el recurrente arguyó que existía una norma jurisprudencial que dicta que una reglamentación es válida si está en armonía con las disposiciones estatutarias bajo las

---

[19] Apéndice, págs. 6-17.

cuales se promulgó. Por ello, el Municipio concluyó que la CASP no podía desvincular la disposición reglamentaria sobre aumentos del requisito de capacidad económica establecido en la Ley Núm. 81-1991. Además, el Municipio cuestionó el que la determinación de la CASP estuviese basada en el caso *Yamilka Ortiz Hernández v. Municipio de Carolina, supra*, ya que esta Curia lo revocó. El 5 de agosto de 2024, la CASP declaró No Ha Lugar la *Moción de Reconsideración* del recurrente. La CASP razonó que esta Curia revocó el caso *Yamilka Ortiz Hernández v. Municipio de Carolina* porque aplicó la doctrina de incuria, no porque este foro haya descartado la interpretación que hizo la CASP sobre el Reglamento de la Policía Municipal.

Inconforme aun, el Municipio de Carolina acudió ante esta Curia e imputó la comisión de los siguientes errores:

1. Erró la CASP al concluir que es impracticable la aplicación de la doctrina de justiciabilidad por cuestión política y que no existe la alternativa de ejercer la prudencia en cuanto a su jurisdicción.

2. Erró la CASP al concluir que la Ley de Municipios Autónomos no aplica a este caso, a pesar de que esta establecía los requisitos para la concesión de aumentos por años de servicio a los empleados municipales que ocuparan puestos regulares, siendo el recurrido uno de ellos, y habiéndose hecho el reclamo bajo dicha ley.

3. Erró la CASP al concluir que el aumento por años de servicio correspondiente al quinquenio 2008-2013 no dependía de la situación económica del Municipio.

4. Erró la CASP al concluir que en todo caso solo debía evaluarse el impacto económico de los aumentos quinquenales para un grupo específico (el de los policías municipales al que pertenece el recurrido), y no el impacto económico de los aumentos para todos los empleados que ocuparan puestos regulares, aun cuando la ley no distingue entre grupos de empleados y los salarios de todos se nutren del mismo fondo general del presupuesto.

5. Erró la CASP al concluir que la prueba de la parte recurrente fue inoficiosa a pesar de que la misma evidenció la situación presupuestaria del Municipio para los periodos que comprende la reclamación y el impacto económico que hubiera tenido la otorgación de aumentos por años de servicio a los empleados que ocupaban puestos regulares, incluido el recurrido.

6. Erró la CASP al descartar 8 de las 13 determinaciones de hecho realizadas por el oficial examinador, aun cuando todas están sostenidas en evidencia sustancial que obra en el expediente administrativo, abusando con ello de su discreción.

7. Erró la CASP cuando dio por probado el hecho de que el recurrido trabajó "ininterrumpidamente" durante el quinquenio 2008-2013, a pesar de que la prueba admitida demostró que durante ese periodo fue suspendido de empleo y sueldo.

El señor Pérez Avilés no compareció ante este Tribunal de Apelaciones. Sin la comparecencia del recurrido, se dio por perfeccionado el recurso y así, procedemos a disponer de la controversia de autos.

**II.**

### *Deferencia a las Determinaciones Administrativas*

Es norma reiterada en nuestro ordenamiento que los tribunales apelativos estamos llamados a conceder amplia deferencia a los órganos administrativos, pues son estos quienes cuentan con la experiencia y el conocimiento especializado en los asuntos que les han encomendado. *Moreno Lorenzo v. Departamento de la Familia*, 207 DPR 833, 839 (2021). La Ley Núm. 38-2017, *Ley de Procedimientos Uniformes* (LPAU) dispone que la revisión judicial de las determinaciones finales de las agencias administrativas se circunscribe a evaluar: (1) si el remedio concedido por la agencia es el adecuado; (2) si las determinaciones de hechos están sostenidas por la evidencia sustancial que surge de la totalidad del expediente; y (3) si las conclusiones de derecho son correctas, para cuyo escrutinio no tenemos limitación revisora alguna. 3 LPRA sec. 9675.

Esto se debe a que en nuestra jurisdicción existe una norma reiterada de que las determinaciones de los entes administrativos gozan de "una presunción de legalidad y corrección que los tribunales debemos respetar, mientras la parte que las impugna no presente la evidencia suficiente para derrotarla". *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018). Por lo que, las decisiones de los organismos administrativos merecen la mayor deferencia judicial.

De esta manera, la revisión judicial de las determinaciones administrativas se limita a revisar si su actuación fue razonable, y solo cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; **(2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar**; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. *The Sembler Co. v. Mun. de Carolina*, 185 DPR 800, 822 (2012). (Énfasis suplido).

### *Ley de Municipios Autónomos de Puerto Rico*

La Ley Núm. 81-1991, *supra,* se creó con el fin de otorgarle a los municipios la mayor autonomía posible y proveerles las herramientas financieras, así como los poderes y facultades necesarias para asumir una función central y fundamental en su desarrollo urbano, social y económico. 21 LPRA sec. 4001. De esta manera, la Ley de Municipios Autónomos se convirtió en la fuente de derecho principal para dilucidar las controversias relativas al personal municipal. *Torres Santiago v. Mun. de Coamo*, 170 DPR 541, 549 (2007). La Ley Núm. 81-1991 expresamente le delegó a los alcaldes y a las legislaturas municipales la preparación de un presupuesto. 21 LPRA secs. 4109-4110.

Sobre los aumentos por años de servicios, el Artículo 11.015 (c) disponía que:

> **Cuando la capacidad económica del municipio lo permita**, los empleados que ocupen puestos regulares y que no hayan recibido ninguna clase de aumentos de sueldo, excepto los otorgados por disposición de una ordenanza municipal, durante un período ininterrumpido de cinco (5) años de servicios, recibirán un aumento de sueldo equivalente a un tipo o paso de la escala correspondiente. Dicho aumento de sueldo se podrá conceder en forma consecutiva hasta que el empleado alcance el tipo máximo de la escala asignada a su puesto. La autoridad nominadora municipal podrá denegar dicho aumento de sueldo a cualquier empleado si a su juicio los servicios del empleado durante el período de cinco (5) años correspondientes no hubiesen sido satisfactorios. En tales casos la autoridad nominadora informará al empleado, por escrito, las razones por las cuales no se le concede el referido aumento de sueldo y de su derecho de apelación ante la Junta de Apelaciones del Sistema de Administración de Personal. (Énfasis nuestro). 21 LPRA sec. 4565.

De lo anterior se desprende que el aumento por años de servicios no es automático ya que, depende de la capacidad económica del municipio para otorgarlo. En ese sentido, cuando un municipio deniega el aumento porque los servicios del empleado no fueron satisfactorios, el municipio tiene que notificarle al solicitante por escrito e informarle sobre su derecho a apelar. No obstante, cuando el aumento no se conceda porque la capacidad económica del municipio no lo permite, la Ley Núm. 81-1991 no requiere que dicha denegatoria se notifique.

### *Reglamentos de la Policía Municipal*

Cónsono con lo anterior, el Municipio de Carolina aprobó el Reglamento de la Policía Municipal del 31 de julio de 2000 (Reglamento de 2000). En su Artículo 2, el Reglamento de 2000 disponía que el mismo se adoptó conforme a las disposiciones contenidas en el *Artículo 2.004 (d) de la Ley Núm. 81-1991[20]*, de la

---

[20] Artículo 2.004 — Facultades Municipales en General. (21 LPRA sec. 4054) Corresponde a cada municipio ordenar, reglamentar y resolver cuanto sea necesario o conveniente para atender las necesidades locales y para su mayor prosperidad y desarrollo. Los municipios estarán investidos de las facultades

Ley de la Guardia Municipal, Ley Núm. 19-1977, y la Ley de la Policía Municipal, Ley Núm. 45-1996.[21] Por su parte, el Artículo 4 disponía que el Reglamento de 2000 se interpretaría en armonía con la Ley Núm. 81-1991, entre otras.

Sobre el aumento de sueldo por mérito, el Artículo 12, Sección 1(8) disponía:

> **Aumento de Sueldo por Mérito** – el Comisionado podrá decretar aumentos de sueldo, dentro de les escalas, a los policías municipales regulares cada doce (12) meses por servicio meritorio, hasta alcanzar el tipo máximo de la escala de retribución, **de acuerdo con la situación fiscal prevaleciente.**
>
> Los policías municipales que no hayan recibido ningún aumento en su retribución durante cinco (5) años consecutivos de servicios, se les concederá aumento por el equivalente de un (1) paso, aun cuando el sueldo sobrepase el tipo máximo de la escala.[22]

Años más tarde, el Municipio de Carolina aprobó mediante la Ordenanza 20, Serie 2016-2017-20, el Reglamento de la Policía Municipal del 30 de noviembre de 2016 (Reglamento de 2016). Al igual que su predecesor, el Reglamento de 2016 se adoptó conforme a las disposiciones contenidas en el *Artículo 2.004 (d) de la Ley Núm. 81-1991* y el mismo se interpretaría en armonía con la Ley Núm. 81-1991, entre otras.[23] En cuanto a los aumentos salariales, el Reglamento de 2016 contempla el aumento de sueldo por mérito y el aumento de sueldo por años de servicio. En particular, el Artículo 12.1 (G) del reglamento dispone que:

> El Alcalde podrá decretar aumentos de sueldos, dentro de las escalas, a los Policías Municipales regulares cada doce (12) meses por servicio meritorio, hasta alcanzar el tipo máximo de la escala de retribución, **de acuerdo con la situaci6n fiscal prevaleciente**.
>
> […]

---

necesarias y convenientes para llevar a cabo las siguientes funciones y actividades:

[…]

(d) Organizar y sostener un Cuerpo de Policías Municipales en conformidad con a la Ley Núm. 19 de 12 de mayo de 1977, según enmendada, conocida como "Ley de la Policía Municipal".

[21] Apéndice, pág. 542.

[22] Apéndice, pág. 546-547.

[23] Apéndice, pág. 526.

> Los Policías Municipales que no hayan recibido ningún aumento en su retribución durante cinco (5) años consecutivos de servicios, se les concederá aumento por el equivalente de un (1) paso, aun cuando el sueldo sobrepase el tipo máximo de la escala, **de acuerdo con la situación fiscal prevaleciente**.[24]

### Doctrina de Cuestión Política

El principio de separación de poderes se encuentra expresamente consagrado en nuestra Constitución. Art. I, Sec. 2, Const. ELA, LPRA, Tomo 1; *Dalmau Santiago v. Oronoz Rodríguez*, 208 DPR 115, 135 (2021). Su finalidad es establecer las responsabilidades y enmarcar el ámbito de acción de las ramas constitucionales de gobierno. *Íd.*, citando a *Rodríguez Casillas et al. v. Colegio*, 202 DPR 428, 420 (2019). Esto, porque la finalidad de esta doctrina es mantener la colaboración entre las tres (3) ramas de gobierno, sin que una domine o interfiera indebidamente con la otra. *Colón Cortés v. Pesquera*, 150 DPR 724, 750 (2000). El propósito ulterior es proteger la libertad de los ciudadanos, garantizando la independencia de cada una de las ramas de gobierno. *Íd.*

Precisamente como corolario de esta doctrina, se ha desarrollado jurisprudencialmente una sabia doctrina de autolimitación judicial que, en ciertas circunstancias, aconseja la no intervención del tribunal con asuntos estrictamente políticos. Por ende, la doctrina de cuestión política plantea que existen asuntos que no son susceptibles de adjudicación o determinación judicial, porque su resolución corresponde a las ramas políticas del gobierno y la intervención judicial conllevaría una intromisión indebida en los asuntos delegados a dichas ramas. *Noriega Rodríguez v. Hernández Colón,* 135 DPR 406, 422 (1994). Así, cuando aplica la doctrina de cuestión política, se considera que el

---

[24] Apéndice, pág. 529.

caso no será justiciable y que el tribunal debe abstenerse de adjudicarlo.

Los criterios que determinan si aplica o no la doctrina de cuestión política son:

A. La Constitución delega expresamente el asunto en controversia a otra rama del Gobierno.

B. No existen criterios o normas judiciales apropiadas para resolver la controversia.

C. Resulta imposible decidir sin hacer una determinación inicial de política pública que no le corresponde a los tribunales.

D. Resulta imposible tomar una decisión sin expresar una falta de respeto hacia otra rama de gobierno.

E. Hay una necesidad poco usual de adherirse sin cuestionamiento a una decisión política tomada previamente.

F. Hay el potencial de confusión proveniente de pronunciamientos múltiples de varios departamentos del Gobierno sobre un punto. *Silva v. Hernández Agosto,* 118 DPR 45, 54 (1986); *Baker v. Carr,* 369 U.S. 186 (1962).

Cónsono con lo anterior, existen tres vertientes de la doctrina de cuestión política, a saber: 1) la que requiere que los tribunales no asuman jurisdicción sobre un asunto, porque este ha sido asignado textualmente por la Constitución a otra rama del Gobierno; 2) aquella según la cual los tribunales deben abstenerse de intervenir, bien porque no existen criterios de decisión susceptibles de descubrirse y administrarse por los tribunales, o bien por la presencia de otros factores análogos; y 3) la que aconseja la abstención judicial por consideraciones derivadas de la prudencia. *Noriega Rodríguez, supra,* pág. 422.

**III.**

El Municipio acude ante nos y plantea la comisión de siete errores que pueden resumirse en tres asuntos. Primero, el recurrente alega que la CASP erró al concluir que no le aplicaba la

doctrina de cuestión política, inmiscuyéndose en las finanzas del Municipio. Segundo, el recurrente alega que la CASP erró al concluir que la Ley Núm. 81-1991 no aplica al caso de epígrafe. Tercero, el Municipio alega que la CASP erró al concluir que el recurrente no presentó prueba sustancial para probar su defensa. Luego de examinar el expediente ante nuestra consideración, al igual que la jurisprudencia y normas aplicables, concurrimos con el Municipio. Veamos.

Como señaláramos, tanto el Reglamento de 2000, *supra*, como el Reglamento 2016, *supra*, se adoptaron conforme a las disposiciones contenidas en el Artículo 2.004 (d) de la Ley Núm. 81-1991, *supra*. Además, en ambos reglamentos se dispuso que estos se interpretarían en armonía con la Ley Núm. 81-1991. A esos efectos, la Ley Núm. 81-1991 disponía que los aumentos por años de servicios se podrían conceder **a aquellos empleados que ocupen puestos regulares y que no hayan recibido aumentos en cinco (5) años cuando la capacidad económica del municipio lo permita**. 21 LPRA sec. 4565.

En definitiva, nos encontramos ante una causa de acción que no es justiciable. Por medio de la referida causa de acción se pretende que esta Curia determine si los empelados de un municipio tiene o no derecho al aumento salarial reclamado. Luego de examinar el derecho aplicable a la controversia, concluimos que el señor Pérez Avilés no tiene derecho a recibir el aumento reclamado. Entiéndase, el señor Pérez Avilés reclama un aumento de salario por años de servicio aplicando erróneamente los requisitos establecidos para un aumento por mérito.

Debemos notar que el Reglamento de 2000 y el Reglamento de 2016 regulan los *aumentos de sueldo por mérito*. Por su parte, la Ley Núm. 81-1991, *supra*, regula todo lo concerniente a los *aumentos por años de servicios*. En la controversia de autos, el aumento que

el señor Pérez Avilés solicitó es uno por años de servicios según lo dispuesto en la Ley de Municipios Autónomos. Recordemos que el Artículo 11.015 (c) disponía que el aumento por años de servicios se podría conceder cuando la capacidad económica del municipio lo permita. En vista de esto, la CASP no solo tomó una determinación incompatible con las disposiciones de la Ley Núm. 81-1991, sino que tomó una determinación basada en unas disposiciones reglamentarias que no le eran aplicables al aumento solicitado por el señor Pérez Avilés. Como el aumento solicitado por el recurrido fue por años de servicios y no por méritos, era imprescindible que la CASP aplicara las disposiciones de la Ley Núm. 81-1991. Así las cosas, y tomando en consideración el requisito de capacidad económica establecido en al Ley de Municipios Autónomos, el reclamo del señor Pérez Avilés no es justiciable.

La Ley Núm. 81-199 y la prueba presentada por el Municipio nos prohíbe —*y a la CASP también*— adentrarnos en los procesos presupuestarios del recurrente. Hacerlo conllevaría una intromisión indebida en las facultades y prerrogativas inherentes a las autoridades municipales y sus determinaciones de política pública.

**V.**

Por los fundamentos antes expuestos, se revoca la decisión recurrida y por lo tanto, se deniega el aumento por años de servicios solicitado por el señor Pérez Avilés.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones